Andrew D. STAPP, Plaintiff,

v.

Stanley RESOR, Secretary of the Department of the Army, Defendant.

No. 69 Civ. 5345.

United States District Court,
S. D. New York.

May 12, 1970.

Whitney North Seymour, Jr., U. S. Atty., S. D. New York, for plaintiff; Peter A. Herbert, Asst. U. S. Atty., of counsel.

1. Pltf. Exh. A, attached to Affid. of Andrew D. Stapp (dated Feb. 6, 1970).

Rabinowitz, Boudin & Standard, New York City, for defendant; Dorian Bowman, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

Plaintiff, by way of motion for summary judgment pursuant to Fed.R.Civ. P. 56, moves for an order declaring his April 19, 1968 undesirable discharge from the Armed Forces null and void, and directing defendant to issue to him an honorable discharge as of the same date.

There is apparently no dispute that the following are the salient facts. Plaintiff, a citizen of the United States and resident of the City and State of New York, was inducted into the Armed Forces on May 13, 1966. He thereafter served at Fort Jackson, South Carolina, and Fort Sill, Oklahoma. On or about August 16, 1967, while stationed at Fort Sill, he received from the Army a Notice of Action to Determine Suitability for Retention in the Army Establishment.[1] Attached to the above notice were two allegations essentially charging plaintiff with: 1) maintaining a "close, continuing, and sympathetic association with the Communist Party," which party has been designated subversive by the Attorney General of the United States; and 2) maintaining a "close, continuing, and sympathetic association with Mary Ann Weisman", who "was an active member of the Socialist Workers Party from 1956 to 1959 and has been an active member of the Workers World Party." The second allegation went on to briefly describe the Workers World Party and its alleged connection with the Socialist Workers Party, an organization also designated as subversive by the Attorney General.[2] It should immediately be noted that the second allegation merely charges plaintiff with associating with someone who belongs to an organization not itself designated subversive, but which consists of former members of an organization deemed subversive.

2. *Id.*

After receipt of the notice and attached allegations, plaintiff requested a personal appearance before a Field Board of Inquiry to rebut the charges against him. On January 30, 1968, he appeared before the Field Board represented by civilian counsel.

At the commencement of the Inquiry, plaintiff unsuccessfully moved to dismiss the allegations.[3] During the course of the Inquiry, the Army presented several civilian witnesses who testified that when plaintiff had discussed his political views with them he stated that although he was not a member of the Communist Party[4] he nevertheless considered himself a communist.[5] Further testimony revealed that while plaintiff did not advocate violent or unconstitutional overthrow of this Government,[6] he did favor governmental and social changes consistent with his communist views to be brought about by constitutional means. Other witnesses testified that while plaintiff was in the Army he had occasionally been seen with Mary Ann Weisman.[7]

At the Inquiry, the Army introduced Department of Defense Form 98 (Armed Forces Security Questionnaire), which was completed by plaintiff in September of 1966. On this form plaintiff disclosed that he attended meetings, received publications and contributed money to organizations listed on the Attorney General's list of allegedly subversive organizations.[8] The Army also introduced into evidence a written statement furnished it by plaintiff in December of 1966 on which plaintiff listed several publications to which he subscribed, the organizations to which he belonged and the financial contributions that he made to various organizations.[9] Also received into evidence, over objection by plaintiff, were allegedly classified documents which neither plaintiff nor his counsel were permitted to examine.[10]

When plaintiff testified at the Inquiry, he admitted that he was a Marxist[11] but denied support of the Communist Party and insisted that he did not maintain a close association with it.[12] Plaintiff further stated that he did not advocate violent overthrow of this Government; on the contrary, he expressed a desire for social and political change brought about by lawful means.[13] Finally, plaintiff admitted being a friend of Mary Ann Weisman, having first met her during his service in the Army.

On April 19, 1968, twenty days short of the expiration of plaintiff's term of service, he received an undesirable discharge from the Armed Forces. It remains uncontradicted by the Government that during Private Stapp's tour of duty he received "good" and "excellent" conduct and efficiency ratings.[14]

After receipt of his undesirable discharge, plaintiff applied to the Army Discharge Review Board for a review of his separation from the Army.[15] Proceedings were conducted on July 11, 1969,[16] and, on August 5 of the same year, plaintiff received notice from the

---

3. Pltf. Exh. B, Proceedings of a Board of Inquiry, Fort Sill, Oklahoma, Jan. 30, 1968, Pvt. Andrew D. Stapp, Respondent (hereinafter referred to as "Field Board Proceedings") at 37–39.

4. *Id.* at 54, 60.

5. *Id.* at 51, 60, 147.

6. *Id.* at 63, 145, 157.

7. *Id.* at 122–23, 141, 156.

8. Gov't Exh. 18, attached to Pltf. Exh. B.

9. Gov't Exh. 13, attached to Pltf. Exh. B.

10. Field Board Proceedings at 222–25.

11. *Id.* at 259.

12. *Id.* at 259–60.

13. *Id.* at 260–62.

14. *E. g., id.* at 237, Affid. of Andrew D. Stapp, attached to plaintiff's Notice of Motion (dated Feb. 6, 1970).

15. Pltf. Exh. D, attached to his complaint (filed Dec. 3, 1969).

16. Proceedings of the Army Discharge Review Board, Andrew D. Stapp, Applicant.

Department of the Army informing him that his request for a change in discharge was denied.[17]

■ There can be no doubt that a military discharge on other than honorable grounds is punitive in nature, since it stigmatizes the serviceman's reputation, impedes his ability to gain employment and is in life, if not in law, prima facie evidence against the serviceman's character, patriotism or loyalty. Kauffman v. Secretary of the Air Force, 135 U.S. App.D.C. 1, 415 F.2d 991, 995 (1969); Van Bourg v. Nitze, 128 U.S.App.D.C. 301, 388 F.2d 557, 559 n. 1 (1967).

■■ It has been equally well established that the claim presented herein may be entertained by this Court since it alleges judicially cognizable injuries for which relief may be granted. That is, this Court has the power to construe Section 1553 of Title 10, United States Code, the statute involved in the instant suit, in order to determine whether or not the defendant has exceeded his powers. Harmon v. Brucker, 355 U.S. 579, 582, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958).

Although plaintiff's carefully briefed claims that (1) his undesirable discharge founded upon his political and personal associations violated his constitutional rights of free speech and assembly, and to due process of law, and (2) that the Army's reliance upon classified documents withheld from plaintiff and his counsel violated due process, are most persuasive, the Court must adhere to its "duty to avoid deciding constitutional questions * * * unless essential to proper disposition of a case * * *." Harmon v. Brucker, *supra* at 581, 78 S. Ct. at 435.

In *Harmon, supra* at 583, 78 S.Ct. at 435, the Supreme Court held that "the type of discharge to be issued is to be determined solely by the soldier's military record in the Army". Therein, the Court found it necessary to interpret Section 693(h) of Title 38, United States Code, which, in pertinent part, provided that findings of the Army Review Board "shall be based upon all available records of the [Army] relating to the person requesting such review * * *." In construing this statute it was determined that "the word 'records', as used in the statute, mean[t] *records of military service * * *.*"

■ The successor statute to 38 U.S. C. § 693(h) is 10 U.S.C. § 1553(c) which, in pertinent part, provides that a review "shall be based on the records of the armed forces concerned and such other evidence as may be presented to the board". Although at first blush it would seem that a discharge need not now be based solely upon "the soldier's military record in the Army" as required by *Harmon, supra*, I find that Congress has not abandoned these sensible standards previously set forth by the Supreme Court. There is no legislative history manifesting any intent to overrule *Harmon*, and in fact the little authority that does exist suggests that Congress did not intend "to make any substantive change in existing law." 1962 U.S.Code Cong. & Adm. News, at 2456; *see* Van Bourg v. Nitze, *supra*, 388 F.2d at 564, n.14.

■ Since it is clear from the record that plaintiff had a good record as a soldier, and since there is not a scintilla of evidence connecting these allegedly guilty associations with Private Stapp's performance of his military duties, I can find no basis in fact or law for issuing plaintiff an undesirable discharge based upon the allegations charged.

■ In Kennedy v. Secretary of the Navy, 131 U.S.App.D.C. 39, 401 F.2d 990, 992 (1968), the Court reversed and remanded a judgment and directed that a discharge on other than honorable grounds be declared invalid since, *inter alia*, "the conduct relied upon [was] not said to have interfered in any way with appellant's service * * *." The facts presented in the instant suit compel a similar result since there has been no showing that plaintiff's "associations" adversely affected his military performance. That is, it is clear from the rec-

17. Pltf. Exh. E, attached to his complaint (filed Dec. 3, 1969).

ord that plaintiff's political associations and activities (however undesirable they are to the military establishment) "left no discernible impact upon the service rendered or in the records of that service * * *. It follows * * * that the statutory standards governing this discharge did not authorize * * * [an undesirable] discharge, with all its derogatory consequences, where the basis therefor was not in the armed forces service record." Kennedy v. Secretary of the Navy, *supra* at 992. Thus, even assuming the veracity of the allegations, under the authority of Harmon v. Brucker, *supra*, these allegations will not serve as a predicate for an undesirable discharge since they do not charge plaintiff with any violation or misconduct connected to his military record. They charge him with purely personal conduct, wholly removed from his military duties, and as such are an unsupportable basis for punitive action.[18] Even if the present statute were construed most favorably for the defendant so as to permit a discharge to be based on a soldier's military record *and* other evidence, the same conclusion would be reached. This follows from the fact that the new statute is written in the conjunctive, and therefore requires that a discharge be at least in part determined by the *military record.*

Since Stapp is charged solely with associations and beliefs and is not charged with any military misconduct or matters affecting his military record, the allegations fail to state a basis for issuance of a less than honorable discharge.

■ Thus, assuming (as we must) that a discharge must be based either entirely (Harmon v. Brucker) or partially (another possible construction of 10 U.S. C. § 1553) upon a soldier's military record, I find the discharge issued to plaintiff improper, since it is predicated entirely upon allegations, which, even if true, relate solely and exclusively to plaintiff's personal, non-military conduct. In short, the allegations are deficient since they fail to place Stapp's military record in issue. This they must do because "records" as used in the present statute must still be defined as "military records" as indicated in *Harmon*, since this word has remained in the statute and *Harmon* has not been overruled either specifically or *sub silentio.*

■ The Court at this time is not called upon to pass on the question of whether or not the Army has a right to *honorably discharge* a soldier based upon that soldier's mere associations with persons or organizations the Army or Attorney General deems objectionable. I do find, however, that it is impermissible for the military to punish an admittedly competent soldier merely because it disapproves of the company he keeps.

Accordingly, and for the foregoing reasons, plaintiff's motion for summary judgment is granted.

Submit order in accordance herewith.

---

18. The Court is not suggesting that a soldier's off-duty associations and confessed political beliefs are totally immune in all circumstances from military scrutiny. I merely suggest that in order for associations and beliefs to serve as a justifiable basis for punitive action, the allegations must, in some affirmative way, connect these associations and beliefs to a soldier's military record.

For example, if they were responsible for a soldier's attempt to undermine or subvert the military then these attempts should be alleged with the same specificity as the associations. The following civil analogy may be helpful.

It is undoubtedly insufficient for an indictment to charge that a defendant merely "walked into a department store". The above-quoted language would not be deficient, however, if followed by "after said store was closed to members of the public and defendant had a deadly weapon in his possession", further followed by "Defendant entered said store with such weapon in order to appropriate money and property possessed and owned by the store."

The instant allegations do not purport to make the requisite connection between otherwise innocent conduct and conduct that becomes punishable because of attendant circumstances specifically set forth in the charging document.